UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIBERATION NEWSPAPER,<br><br>   Plaintiff,<br><br>   v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>   Defendant. | Civil Action No. 13-cv-0836 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Liberation Newspaper, filed a request for documents with the defendant, the Department of State, under the Freedom of Information Act ("FOIA"), 5 U.S.C. 552 *et seq.* seeking records pertaining to possible payments made to journalists by the United States government during the course of the criminal prosecution of five individuals convicted of being Cuban intelligence agents.[1]  *See* Compl., ECF No. 1.  Pending before the Court is the defendant's motion to dismiss or, in the alternative, for summary judgment, ECF No. 21.  For the reasons stated below, the defendant's motion is granted.[2]

---

[1] The defendants are known colloquially as the "Cuban 5," *see* Compl. ¶ 3, and have since been returned to Cuba. *See* Karen DeYoung, *Obama Moves to Normalize Relations with Cuba as American is Released by Havana*, WASHINGTON POST (December 17, 2014).

[2] As part of its motion, the defendant has filed a motion to dismiss the plaintiff's request for expedited processing for lack of subject matter jurisdiction.  Under 5 U.S.C. §552(a)(6)(E)(iv), a court lacks subject matter jurisdiction "to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."  The defendant maintains that it has made a complete response to the request, and, for the reasons stated below, the Court determines that the defendant's response was adequate.  Accordingly, the request for expedited processing is moot and this Court no longer maintains jurisdiction to consider the claim.  *See Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("Once an agency has made its final determination under § 552(a)(6)(A), the *timeliness* of that determination is no longer a live controversy fit for judicial review." (emphasis in original)).  The defendant's motion to dismiss the request for expedited processing for lack of jurisdiction is granted.

I.   **BACKGROUND**

The plaintiff brought this FOIA action to obtain documents from the defendant dating from January 1998 through December 2002 and relating to alleged contracts between the United States government and ninety Miami journalists who covered the trial of five individuals convicted of acting and conspiring to act as unregistered Cuban intelligence agents and for conspiring to commit murder.[3]  *See* Compl. ¶¶ 1-3, 33; *United States v. Campa*, 459 F.3d 1121 (11th Cir. 2006).  According to the plaintiff, these contracts could provide evidence that the United States paid journalists to spread propaganda domestically and influence public opinion regarding the accused's trial.  Compl. ¶¶ 4-5, 7.  Specifically, the plaintiff alleges that the United States Information Agency ("USIA"), the Broadcasting Board of Governors, and the Office of Cuba Broadcasting engaged in "covert payments" to certain nominally independent Miami journalists in order to influence public opinion regarding the trial.  *Id.* ¶ 4.

To obtain information regarding these alleged payments, the plaintiff submitted FOIA requests to the defendant, the Department of State, and to the Broadcasting Board of Governors.[4] Although the USIA was originally a separate entity from the defendant, the USIA was abolished in 1999 and portions of the agency were subsumed by the defendant.  *See* 22 U.S.C. § 6531.  The plaintiff requested "any and all contracts in the possession or control of the Department of State regarding all grants, payments, purchase orders and/or obligations of funds to be transferred" to ninety journalists during the period of January 1998 through December 2002.  Compl. ¶ 32.  The plaintiff also requested expedited processing of the request, which was denied.  *Id.* ¶ 60.  Nearly three years after the original request, and after receiving no documents from the defendant, the plaintiff brought this action in order to obtain the requested materials.  *Id.* ¶¶ 90–91

---

[3] Although the plaintiff's Complaint states that the FOIA request specified forty-four journalists, a review of the request reveals the request to specify ninety journalists.  *See* Ex. 1, Decl. of Sheryl L. Walter, ECF No. 17-2.
[4] The request to the Broadcasting Board of Governors yielded "some responsive information."  Compl. ¶ 12.

The Court issued a scheduling order requiring the defendant to "complete a search reasonably likely to yield all responsive records in its possession, custody or control" and set a schedule for the production of discovered documents. *See* Minute Order (August 27, 2013). Consistent with the Court's Order, and as outlined in the three detailed declarations submitted by the defendant during the course of this litigation, the defendant searched for responsive documents. *See* Decl. of Sheryl L. Walter ("Walter Decl."), ECF No. 17-1; Second Decl. of Sheryl L. Walter ("Second Walter Decl."), ECF No. 21-4; Decl. of John F. Hackett ("Hackett Decl."), ECF No. 25-1.

First, the defendant identified the sources of potentially relevant electronic and physical records. The defendant identified records systems for the entire Department of State as well as records systems pertaining to specific individual divisions within the Department of State.[5] Once identified, the defendant spoke with the relevant authorities within the Department of State on how best to search their record systems. In consultation with these authorities, the defendant searched the relevant records repositories, including some records maintained previously by the USIA but now in the custody of the defendant. These searches and the criteria employed are laid out in the following table:

---

[5] After discussing the FOIA request with records officials from the Bureau of Educational and Cultural Affairs and the Office of Acquisitions Management—two of the branches initially identified as potentially having responsive records—the defendant determined that "it was not reasonably likely" that such branches would maintain records related to the request. The Bureau of Education and Cultural Affairs was deemed unlikely to have responsive materials because its mission is "to build friendly, peaceful relations between the people of the United States and the people of other countries through academic, cultural, sports, and professional exchanges, as well as public-private partnerships." *See* Second Walter Decl. ¶¶ 6–7. Likewise, the Office of Acquisitions Management was deemed unlikely to have responsive materials because its mission related to contracts for "supplies, equipment and services, construction of overseas facilities, IT services and equipment, residential and office furniture, safety and security services and equipment, and maintenance." *Id.* ¶ 12. Accordingly, both systems were not searched by the defendant. This decision is not disputed by the plaintiff.

| Office | Records System | Search Criteria |
|---|---|---|
| USIA | Retired Records | Manual Search[6] |
| Department of State | Retired Record Inventory Management System | Names of 90 Journalists,[7] "Miami Five," "Cuban Five," "Journalist," "Payments," "Contracts," "Cuba" |
| Department of State | Central Foreign Policy Records ("Central File") | Names of 90 Journalists [8] |
| Office of the Legal Adviser | Legal Adviser Content Server and Paper Records | "Contract," "Broadcasting Board," "BBG," "Cuba Broadcasting," "OCB," "Cuban Five" |
| Bureau of Western Hemisphere Affairs | Network Drive; individual email accounts; and paper records | "independent journalism," "ESF," "Economic Support Funds," "EAID," "Foreign Assistance," "Miami Five," "Cuban Five" |

After conducting these searches, the defendant determined that it had completed its search efforts and that it maintained no documents responsive to the plaintiff's request. *See*

---

[6] As discussed below, *see infra* part III, the USIA's retired records contain written descriptions summarizing the materials contained in the records. The defendant reviewed all summary descriptions for documents from the relevant time period. *See* Walter Decl. ¶¶ 11–14; Hackett Decl. ¶¶ 8–9.

[7] The defendant searched using the names of all ninety journalists as individual searches. The journalists were: Raul Ferreira, Pablo Alfonso, Gail Epstein Nieves, Alfonso Chardy, Wilfredo Cancio Isla, Olga Connor, Alejandro Armengol, Enrique Encinosa, Juan Manuel Cao, Armando Perez Roura, Ninoska Perez Castellon, Ramon Bonachea, Lourdes D'Kendall, Diego Suarez, Alberto Hernandez, Ariel Ramos, Miguel Cossio, Carlos Alberto Montaner, Roberto Martin Perez, Helen Aguirre Ferre, Roberto Martinez Sixto, Elio Oliva, Oscar Haza, Jose Basulto, Ramon Saul Sanchez, Nelson Rubio, Bernadette Pardo, Eduardo Gonzalez Rubio, Humberto Cortina, Jose Alfonso Almora, Reinaldo Aquit, Ivette Leyva, Barbara Bermudo, Agustin Acosta, Rodrigo Alonzo, Carlos Barba, Armando Alvarez Bravo, Liz Balmaseda, Vanessa Bauzá, Guillermo Benites, Reinaldo Bragado Bretaña, Carlos Castañeda, Armando Correa, Cynthia Corzo, Paul Crespo, Vivian Crucet, Ena Curnow, Elaine De Valle, Julio Estorino, Roberto Fabricio, Tomás García Fuste, Lisette García García, Manny García, Mario Llerena, Marika Lynch, Javier Lyonnet, Luis Felipe Marsans, Lydia Martin, Ramón Mestre, Ruth Montaner, Daniel Morcate, Leonel Morejón Almagro, Alberto Múller, Olance Nogueras, Damarys Ocana, Casto Ocando, Sara Okon, Rafael Orizondo, David Ovalle, Jose Dante Parra Herrera, Enrique Patterson, Ivonne Pérez, Sue Anne Pressley, Adam Ramírez, Gerardo Reyes, Jeanette Rivera-Lyles, Raúl Rivero, Frances Robles, Jorge José Rodríguez, Roberto Rodríguez-Tejera, Rafael Rojas, Ian Román, Maria Elvira Salazar, Fabiola Santiago, Agustin Tamargo, Joaquin Utset, Andrés Viglucci, Luisa Yáñez, José Antonio Zarraluqui, Patricia Zengerle. *See* Ex. 1, Walter Decl.

[8] Although the defendant originally searched the Central File for documents containing the names of the journalists within the same paragraph as certain subject matter search terms, following a request by the plaintiff and "out of an abundance of caution," the defendant modified the search to include only the names of the journalists without the restrictive parameters. *See* Hackett Decl. at ¶ 6.

4

Second Status Report by Def. Pursuant to Court's Minute Order of October 30, 2013, ECF No. 18. Accordingly, the defendant moved for summary judgment regarding the plaintiff's FOIA request. Following challenges to the adequacy of the defendant's search for records, the defendant conducted a renewed search of the records contained in the State Department's Central File and submitted an updated declaration describing the revised search. *See* Hackett Decl. Altogether, the defendant has submitted three declarations detailing its searches in this matter: an initial declaration submitted as a status report regarding the defendant's progress in searching its records, *see* Walter Decl.; an updated declaration filed with its motion for summary judgment detailing the defendant's efforts to search its records, *see* Second Walter Decl.; and a further updated declaration filed with its reply briefing providing details of supplemental searches conducted in response to criticism by the plaintiff of the initial search methodology, *see* Hackett Decl.

## II.     LEGAL STANDARD

"In FOIA cases, '[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). With respect to the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *Elec. Frontier Found. v. U.S. Dep't of Justice,* 739 F.3d 1, 7 (D.C. Cir. 2014); *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. U.S. Dep't of State,* 257 F.3d 828, 838 (D.C. Cir. 2001). Summary

judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3). For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby,* 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *Veitch v. England,* 471 F.3d 124, 134 (D.C. Cir. 2006); *see Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See, e.g.,* FED. R. CIV. P. 56(c)(1). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50 (internal citations omitted).

**III.   DISCUSSION**

The plaintiff challenges the adequacy of the defendant's search on three grounds. First, the plaintiff challenges the defendant's search of the Central File, arguing that it should not have used certain restrictive parameters in connection with the names of the journalists. Pl.'s Opp'n at 8. Second, the plaintiff challenges the adequacy of the search of the retired records of the USIA,

arguing that it is unclear from the declarations submitted what documents were searched. *Id.* at 9.  Third, the plaintiff challenges the adequacy of the search of the files of the Office of Legal Advisor and the Bureau of Western Hemisphere Affairs, arguing that the searches should have employed alternative search terms. *Id.* at 11.  As evidence of the inadequacy of the defendant's search, the plaintiff points to a "purchase order" in the amount of $28,000 paid to a journalist identified in the FOIA request for "public relations services" during the relevant time period, which the plaintiff obtained by searching the Federal Procurement Data System, a public website. *See* Pl.'s Opp'n at 5, 10.

As a general matter, the plaintiff's challenge to the adequacy of the defendant's search misconceives the standard for the adequacy of an agency's search under FOIA.  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  "An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Such affidavits should "denote which files were searched," by whom those files were searched, and reflect a "systematic approach to document location." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).  "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is

necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Only where "a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,'" is summary judgment inappropriate. *Iturralde*, 315 F.3d at 314 (quoting *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). Moreover, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Id.* at 315 (collecting cases). Rather, a plaintiff must "offer evidence of circumstances sufficient to overcome an adequate agency affidavit." *Id.* For instance, the plaintiff could contest that the defendant "failed to search particular offices or files," or "failed or refused to interview government officials . . . that . . . might have been helpful in finding the missing documents." *Id.*

The Court is satisfied, based on the three separate and detailed declarations submitted by the defendant, that the defendant conducted an adequate search for responsive records, even though the search yielded no responsive documents and even though the plaintiff uncovered a seemingly responsive document during its independent search of public websites. The defendant reviewed both hard copy and electronic documents contained in numerous databases across multiple divisions within the State Department. Beyond the requirements placed upon the defendant, the defendant responded to criticism from the plaintiff and revised its search parameters to provide an even broader search for responsive documents. Although the plaintiff has pointed to a single document discovered outside of the search process, one such document is not "sufficient to overcome an adequate agency affidavit," let alone the three declarations submitted in the present case. *See id.* Moreover, the plaintiff points to no circumstances

regarding the search sufficient to overcome the presumption of good faith afforded to the defendant's declarations.

The plaintiff's first challenge to the adequacy of the search—the use of certain limiting parameters in the defendant's search of the Central File—is now moot. In response to the plaintiff's objection, the defendant searched the Central File without the complained-of limiting parameters. *See* Hackett Decl. ¶ 6 ("[A]s a matter of discretion and out of an abundance of caution, the . . . analyst with knowledge of both the request and the records system conducted a supplemental full-text search of the Central File for each of the 90 journalists' first and last names, without any additional delimiting terms."). The search still yielded no results. *Id.*

The plaintiff's second challenge to the adequacy of the search—the lack of detail concerning the search of the USIA's retired records—is without merit. The defendant's declarations explain in detail the process used to review the retired USIA records. The retired records of the USIA are organized in a two-tier system. The first tier is organized by the date the record was retired and the USIA office that originated it. The record is also assigned an "accession number," which corresponds to its location in the second tier of the records system. The second tier contains the "accession number" and a detailed description of the record. After consultation with analysts familiar with the FOIA request and the retired records system, along with the former records manager for the USIA, the defendant manually searched all the descriptions of the second tier records dated January 1998 to December 2002, the period of time sought by the plaintiffs. The search yielded no results. *See* Walter Decl. ¶¶ 11–14; Hackett Decl. ¶¶ 8–9. Ms. Walter's declaration (and Mr. Hackett's declaration subsequently) describes in great detail how the multi-layer search was performed, who performed it, and it also avers that

all of the records reasonably likely to include responsive documents were searched. The defendant's search of the retired USIA files was reasonable.

Third, the plaintiff's final challenge to the adequacy of the search—the omission of certain search terms with respect to records possessed by the Office of Legal Advisor and the Bureau of Western Hemisphere Affairs—is also without merit. The plaintiff posits that the defendant should have used alternative search terms to yield more responsive documents.[9] Yet, speculation as to the potential results of a different search does not necessarily undermine the adequacy of the agency's actual search. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original); *see also Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003) (stating that "[t]he focus of the adequacy inquiry is not on the results" of the search). "There is no bright-line rule requiring agencies to use the search terms proposed" by a plaintiff. *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009). Defendants have discretion in crafting a list of search terms that "they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request." *Id.* Where the search terms are reasonably calculated to lead to responsive documents, the Court should not "micro manage" the agency's search. *See Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific

---

[9] In addition to the electronic searches, the defendant reviewed all paper records in the possession of the relevant divisions of the Office of the Legal Advisor and the Bureau of Western Hemisphere Affairs and reasonably likely to contain responsive records. *See* Second Walter Decl. at ¶¶ 10, 15. One of the files for the Office of Legal Adviser containing potentially relevant paper documents was labeled "Cuban Five," further underscoring the reasonableness of the defendant's search terms in the present case. *See id.*

exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch.").

The search terms in the instant case were reasonably calculated to lead to responsive documents. After discussions with State Department officers familiar with and, in one case, responsible for records management, the defendant crafted a list of search terms reasonably designed to lead to the information requested. Although the defendant used different search terms for different databases, this discrepancy does not undermine the conclusion that the search was reasonable given that the search terms were used after consultation with employees familiar with the databases and were reasonably designed to yield responsive information. *See, e.g.*, *Am. Fed'n of Gov't Emps., Local 812 v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 151 (D.D.C. 2010) ("Plaintiffs' argument that the search was inadequate because different officials used different terms when searching their own files is also unpersuasive."); *Judicial Watch, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 254 (D.D.C. 2014) ("Though some agencies may choose to search for responsive documents in a centralized fashion using consistent search terms and techniques across various departments, nothing in FOIA's text or the relevant case law requires an agency to do so."). The search terms concerned the relevant subject matter and were designed to uncover all responsive records. *See* Hackett Decl. at ¶ 13 ("The [Office of Legal Advisor] staff concluded that the aforementioned keywords were reasonably tailored to uncover all responsive records within the electronic records systems they were searching."); ¶ 16 ("The [Bureau of Western Hemisphere Affairs] staff concluded that the aforementioned keywords were reasonably tailored to uncover all responsive records within the electronic records systems they were searching."). These efforts amply demonstrate the adequacy of the search conducted here. This defendant's conclusion is entitled to "a

presumption of good faith," which the plaintiff's "purely speculative claims about the existence and discoverability of other documents" has not overcome. *See SafeCard Servs.*, 926 F.2d at 1200 (internal quotations omitted); *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013). Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior.

In short, the Court is satisfied, based on the three detailed submissions by the defendant, that the defendant conducted an adequate search for responsive records, despite the fact that the search yielded no documents.

### IV. CONCLUSION

For the reasons stated, the Court concludes that "there is no genuine dispute as to any material fact," FED. R. CIV. P. 56(a), regarding the adequacy of the defendant's search for responsive records in response to the plaintiff's FOIA request. Accordingly, the defendant's motion for summary judgment is granted.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 19, 2015

_____
BERYL A. HOWELL
United States District Judge